IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| JOSEPH STEPHEN WEST, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:13-cv-912-WHA-WC |
| | ) | |
| LEEPOSEY DANIELS, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

Before the court is Defendants' Renewed Motion to Dismiss Plaintiff's First Amended Complaint[1] (Doc. 25), and Plaintiff's Response in Opposition (Doc. 28). The District Judge referred this case to the undersigned Magistrate Judge "for action or recommendation on all pretrial matters." Order (Doc. 2). After a review of Defendants' Motion to Dismiss and all supporting briefs, and for the reasons that follow, the undersigned RECOMMENDS that Defendants' Renewed Motion to Dismiss (Doc. 25) be GRANTED.

**I.     STANDARD OF REVIEW**

Defendants move the court to dismiss the Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. "Under [Rule 12(b)(6)], whether a plaintiff failed to

---

[1] Defendants' first motion to dismiss was filed in response to Plaintiff's initial Complaint. Defendants moved to dismiss that Complaint. In response, Plaintiff requested and was granted leave to file an Amended Complaint. Defendants now seek dismissal of the Amended Complaint on essentially identical grounds as those raised in the original motion to dismiss. Because Plaintiff was put on notice of Defendants' challenges to his claims prior to filing his amended complaint, the court finds it unnecessary to allow for a second amended complaint.

state a claim upon which relief can be granted must be ascertained from the face of the complaint." *Garcia v. Copenhaver, Bell & Assocs.*, 104 F.3d 1256, 1266 n.11 (11th Cir. 1997). Generally, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *In re Johannessen*, 76 F.3d 347, 349 (11th Cir. 1996). In considering a motion pursuant to Rule 12(b)(6), the court must "accept the facts of the complaint as true and view them in the light most favorable to the nonmoving party." *Magluta v. Samples*, 375 F.3d 1269, 1273 (11th Cir. 2004).

"[A] Rule 12(b)(6) dismissal on statute of limitations grounds is appropriate only if it is apparent from the face of the complaint that the claim is time-barred." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (citation and internal quotation marks omitted). The statute of limitations begins to run on a § 1983 claim when "the plaintiffs know or should know (1) that they have suffered the injury that forms the basis of their complaint and (2) who has inflicted the injury." *Chappell v. Rich*, 340 F.3d 1279, 1283 (11th Cir. 2003). In determining this issue, "a court must first identify the alleged injuries, and then determine when the plaintiff could have sued for them." *Smith v. Shorstein*, 217 F. App'x 877, 881 (11th Cir. 2007).

II.   **BACKGROUND**

The facts essential to resolution of the Rule 12(b)(6) motion to dismiss are as follows: Although Plaintiff is no longer incarcerated, at all times relevant to this action Plaintiff was an inmate in the custody of Alabama Department of Corrections. Am.

Compl. (Doc. 23) at 1. In January, 2011, Plaintiff arrived at Kilby Correctional Facility where a medical screening was conducted. *Id.* at 2.

Upon transfer to Easterling Correctional Facility in February 2011, Plaintiff again underwent a medical screening. *Id.* On May 4, 2011, Plaintiff met with Nurse Practitioner Oblinger ("Nurse Oblinger") for his quarterly chronic-care testing. *Id.* At that time, Nurse Oblinger told Plaintiff that he "still" had blood in his urine. *Id.* Plaintiff inquired what Nurse Oblinger meant by "still," as he was unaware of any previous instances of having blood in his urine. *Id.* Nurse Oblinger advised Plaintiff that blood was discovered in his urine during his medical screening at Kilby and again when screened upon arrival at Easterling. *Id.* Nurse Oblinger told Plaintiff she would order more testing. *Id.*

Apparently that testing was not done. Plaintiff again saw Nurse Oblinger for quarterly chronic-care testing on or about August 1, 2011. *Id.* Nurse Oblinger again reported finding blood in Plaintiff's urine. *Id.* Nurse Oblinger told Plaintiff that she could not explain why the additional testing she had ordered had not yet been completed, but she assured Plaintiff she would order the testing again. *Id.*

On August 4, 2011, Plaintiff filed a medical grievance regarding the blood found in his urine. *Id.* Plaintiff's mother and wife also called the Warden at Easterling "requesting medical help for blood in [P]laintiff's urine, high blood pressure, and cholesterol medications." *Id.* at 3. On August 30, 2011, Plaintiff filed a medical grievance appeal "citing medical problems," and Plaintiff's mother called State Senator Del Marsh's office "about these problems." *Id.*

3

Plaintiff was transferred to Elmore Correctional Facility on September 1, 2011. *Id.* Defendant Leeposey Daniels ("Warden Daniels") is and was the Warden at Elmore, and Defendant Leon Bolling ("Warden Bolling") is and was the Assistant Warden. *Id.* at 1. Defendant Corizon Medical Services ("Corizon") is and was the medical service provider for Elmore Correctional Facility. *Id.* at 2. On September 4, 2011, Plaintiff filed a medical request, and on September 11, 2011, Plaintiff filed an appeal.[2] *Id.* at 3. The next week Plaintiff saw Nurse Practitioner Kornett ("Nurse Kornett") at which time "they discussed all the medical problems." *Id.* Nurse Kornett told Plaintiff she would order more testing. *Id.*

On October 7, 2011, Nurse Kornett notified Plaintiff that she had ordered a CT scan, which was conducted on October 20, 2011. *Id.* On October 25, 2011, Nurse Kornett notified Plaintiff that the CT scan revealed a small spot on his right kidney and that she would order further evaluations. *Id.*

Over the next few months, "Plaintiff filed several medical requests"[3] and Plaintiff's mother and wife "called Warden Daniels and the Warden at Stanton Corr[ectional] Fac[ility] where the health care unit was located."[4] *Id.* Plaintiff also alleges that his mother and sister "spoke to doctors at the SCU.[5] Several times they were told the file could not be located." *Id.*

---

[2] The content of these documents is unknown.

[3] The content of these documents is unknown.

[4] Plaintiff provides no information regarding what was said during the phone calls.

[5] Plaintiff does not explain the meaning of "the SCU" or its relevance.

On January 11, 2012, Nurse Kornett notified Plaintiff that he would see Dr. Newman, an urologist at Jackson Hospital, on January 25, 2012. *Id.* At that appointment, Dr. Newman asked Plaintiff why three months had passed since the CT scan, and Plaintiff responded that he did not know. *Id.* Dr. Newman recommended a surgeon, Dr. Lee Hammondtree, who, in Dr. Newman's opinion, would be able to "freeze" or snip out the spot on Plaintiff's kidney if there had been no change in its size. *Id.* at 3-4.

On February 13, 2012, Plaintiff met with Dr. Hammondtree, who expressed concern about possible growth and recommended against freezing the spot. *Id.* at 4. Dr. Hammondtree told Plaintiff he would robotically remove the spot. *Id.* On February 20, 2012, Plaintiff was transported to Brookwood Medical Center for "what he thought was going to be one day surgery to remove the spot on his right kidney." *Id.* However, during the operation, Dr. Hammondtree discovered that sarcomas had grown into Plaintiff's renal vein, and Dr. Hammondtree decided to remove the whole kidney. *Id.* When Plaintiff woke from surgery, he was informed his right kidney had been removed. *Id.*

Plaintiff was returned to Elmore Correctional Facility on February 24, 2012. *Id.* At a follow-up appointment with Dr. Hammondtree in June 2012, "Plaintiff and ALDOC were advised" that Plaintiff would need an additional follow-up in one year. *Id.* Plaintiff was not taken for the follow-up despite Plaintiff's request at his May 2013 chronic care testing. *Id.*

On November 28, 2013, Plaintiff was released from Alabama Department of Corrections custody and placed on house arrest. *Id.* As a condition of his house arrest, Plaintiff had to get a court order granting him permission to attend doctor appointments. *Id.* Plaintiff scheduled and attended a follow-up appointment with Dr. Hammondtree shortly after his release. *Id.* Dr. Hammondtree referred Plaintiff to Dr. Behminthini, a nephrologist, who Plaintiff set an appointment to see on March 28, 2014. *Id.* However, the appointment had not been approved by the court, so Plaintiff had to reschedule the appointment. *Id.*

Additionally, Plaintiff alleges as follows:

> P[laintiff] was denied blood pressure, cholesterol, allergy, and acid reflux medications on numerous occasions. . . . He was also denied testing to determine what was causing pain in his left hip, though he repeatedly requested treatment and was denied any dental treatment for the whole of the 4 years.
> Plaintiff advised [] Defendants of his family history of diabetes and heart problems.

*Id.* at 5-6.

## III.  DISCUSSION

Defendants' motion to dismiss raises five grounds for dismissal of the claims against them:  (1) Plaintiff's 42 U.S.C. § 1983 claims against Warden Daniels and Warden Bolling in their official capacities are barred by the Eleventh Amendment; (2) Section 1983 does not permit any finding of liability against Warden Daniels, Warden Bolling, or Corizon on the basis of *respondeat superior*; (3) Plaintiff's Complaint fails to state any claim upon which relief can be granted under § 1983; (4) Warden Daniels and Warden Bolling are entitled to qualified immunity from Plaintiff's claims for relief under

6

§ 1983; and (5) Plaintiff's claims arising from circumstances and/or events occurring more than two years prior to the date of his filing are time-barred. Defs.' Mot. (Doc. 25) at 2. The arguments are addressed in turn below.

### A. *Plaintiff's 42 U.S.C. § 1983 claims against Warden Daniels and Warden Bolin in their official capacities are barred by the Eleventh Amendment*

To the extent Plaintiff sues Warden Daniels and Warden Bolling in their official capacities, they are immune from monetary damages. Official capacity lawsuits are "in all respects other than name . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).

> A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S. Ct. 900, 908, 79 L. Ed. 2d 67 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59], 116 S. Ct. 1114, 1125, 134 L. Ed. 2d 252 (1996). Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity. Therefore, Alabama state officials are immune from claims brought against them in their official capacities.

*Lancaster v. Monroe Cnty.*, 116 F.3d 1419, 1429 (11th Cir. 1997). Thus, Warden Daniels and Warden Bolling are state actors entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities, and any claims against Warden Daniels and Warden Bolling in their official capacities are due to be dismissed.

### B. Section 1983 does not permit any finding of liability against Warden Daniels, Warden Bolin, or Corizon on the basis of *respondeat* superior

Supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior*. *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir.2003) (citations omitted).

> [S]upervisory liability under § 1983 occurs either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation. The necessary causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so. Alternatively, the causal connection may be established when a supervisor's custom or policy results in deliberate indifference to constitutional rights or when facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so. The standard by which a supervisor is held liable in his individual capacity for the actions of a subordinate is extremely rigorous.

*Cottone v. Jenne*, 326 F.3d 1352, 1360-61 (11th Cir. 2003) (internal citations and quotations omitted).

#### 1. Warden Daniels and Warden Bolling in their Individual Capacities

The claims made against Warden Daniels and Warden Bolling individually challenging the constitutionality of treatment provided by medical professionals entitles Plaintiff to no relief as "[t]he law does not impose upon correctional officials a duty to directly supervise health care personnel, to set treatment policy for the medical staff or to intervene in treatment decisions where they have no actual knowledge that intervention is necessary to prevent a constitutional wrong." *Cameron v. Allen*, 525 F. Supp. 2d 1302, 1307 (M.D. Ala. 2007).

Assuming *arguendo* Warden Daniels and Warden Bolling exerted some authority over the manner in which those persons responsible for the provision of medical treatment rendered such treatment, liability for medical treatment provided to Plaintiff could attach to Warden Daniels and Warden Bolling only if (1) they "personally participate[d] in the alleged unconstitutional conduct" or (2) "there is a causal connection between [their] actions . . . and the alleged constitutional deprivation." *Cottone*, 326 F.3d at 1360.

Plaintiff's complaint is devoid of any allegations indicating that Warden Daniels and Warden Bolling personally participated in or had any involvement, direct or otherwise, with the medical treatment provided to Plaintiff. Plaintiff does not allege any facts to support an inference that Warden Daniels and Warden Bolling directed medical personnel to act unlawfully, or that Warden Daniels and Warden Bolling knew that medical personnel would do so and failed to stop such unlawful action. In addition, Plaintiff has presented no plausible allegations of obvious, flagrant or rampant abuse of continuing duration in the face of which these defendants failed to take corrective action. Finally, Plaintiff made no allegation that the challenged course of medical treatment occurred pursuant to a policy enacted by Warden Daniels and Warden Bolling. The requisite causal connection has not been alleged in this case and liability under the custom or policy standard is not justified. Thus, Plaintiff has failed to state a claim against Warden Daniels and Warden Bolling on the basis of supervisory liability. Warden Daniels and Warden Bolling are, therefore, due to be dismissed.

### 2. Corizon Medical Services

The claims made against Corizon challenging the constitutionality of treatment provided by medical professionals entitles Plaintiff to no relief. Plaintiff does not name any individual health care professional as a defendant; instead, he seeks to hold Corizon liable for the conduct of unnamed medical personnel.

> "[W]hen a private entity . . . contracts with a county to provide medical services to inmates, it performs a function traditionally within the exclusive prerogative of the state" and "becomes the functional equivalent of the municipality" under section 1983. *Buckner v. Toro*, 116 F.3d 450, 452 (11th Cir. 1997). "[L]iability under § 1983 may not be based on the doctrine of respondeat superior." *Grech v. Clayton Cnty., Ga.*, 335 F.3d 1326, 1329 (11th Cir. 2003) (en banc).

*Craig v. Floyd Cnty., Ga.*, 643 F.3d 1306, 1310 (11th Cir. 2011).

Because Corizon is a private medical contractor performing a traditional state function of providing health care to inmates, Corizon is the functional equivalent of a municipality. Consequently, the court evaluates Plaintiff's claim against Corizon as it would evaluate the claim against a municipality.

> *[R]espondeat superior* is not a valid theory of liability for private contractors employed by a state, *Street* [*v. Corr. Corp. of Am.*,] 102 F.3d [810,] 818 [(6th Cir. 1996)]. Indeed, "every circuit to consider the issue" has extended "to private corporations as well" the rule that a defendant cannot be held liable under section 1983 on a *respondeat superior* or vicarious liability basis. *Id*. That [the defendant] is a professional limited liability company makes no difference with respect to *respondeat superior* liability under section 1983. *See, e.g.*, *Craig v. Floyd Cnty., Ga*, 643 F.3d 1306, 1310 (11th Cir. 2011) (finding that section 1983 claims against limited liability company cannot be based on respondeat superior.)

*Savoie v. Martin*, 673 F.3d 488, 494 (6th Cir. 2012).

Plaintiff cannot state a § 1983 claim against Corizon based on the actions of its employees. Because Corizon cannot be held directly liable, Plaintiff must demonstrate that a history of widespread abuse put a responsible supervisor on notice of the need to correct the alleged deprivation and the supervisor failed to do so or that Corizon had a policy or custom that represents official policy that resulted in the delay or denial of adequate medical care to him. *See Cottone*, 326 F.3d at 1360-61; *Savoie*, 673 F.3d at 494. Plaintiff pled no facts to establish a history of widespread abuse that would have put Corizon supervisors on notice of a need to correct constitutional deprivations. Nor did Plaintiff allege that any injury he may have suffered was ascribable to a Corizon policy or custom. Accordingly, the court concludes that Plaintiff has failed to state a claim against Corizon on the basis of supervisory liability. Corizon is, therefore, due to be dismissed.

### *C.   Plaintiff's Complaint fails to state any claim upon which relief can be granted under § 1983*

To prevail on a claim concerning an alleged denial of adequate medical treatment, an inmate must, at a minimum, show that health care personnel acted with deliberate indifference to his serious medical needs. *Taylor v. Adams*, 221 F.3d 1254 (11th Cir. 2000). "To show deliberate indifference, the plaintiff must prove three things: '(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; [and] (3) by conduct that is more than gross negligence.'" *Thomas v. Poveda*, 518 F. App'x 614, 616 (11th Cir. 2013) (unpublished), *cert. denied*, 134 S. Ct. 529 (2013) (quoting *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1327 (11th Cir. 2007) (quotation marks and alternation omitted)).

Plaintiff has not sufficiently alleged that (1) any defendant had subjective knowledge of a risk of serious harm and (2) disregarded that risk (3) through conduct that is more than gross negligence. First, Plaintiff has not pled any facts that any of the named defendants had subjective knowledge that Plaintiff was at risk of serious harm. While Plaintiff notes that Nurse Kornett was aware of the blood in Plaintiff's urine and, later, the results of the CT scan, Nurse Kornett is not named as a defendant. Plaintiff does not allege that Warden Daniels or Warden Bolling had any knowledge of Plaintiff's medical condition. Plaintiff claims that his mother and wife called Warden Daniels sometime between October 2011 and January 2012; however, Plaintiff does not state what Plaintiff's mother or wife said to Warden Daniels or even whether Warden Daniels answered the phone. "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer v. Brennan*, 511 U.S. 825, 838 (1994). Without any specific allegation of what any Defendant knew at any given time, Plaintiff has failed to sufficiently allege that any named defendant had subjective knowledge of a risk of serious harm.

Second, Plaintiff has not pled facts that anyone, named defendant or otherwise, disregarded a risk of serious harm to Plaintiff. Only three weeks elapsed from the time Plaintiff arrived at Elmore Correctional Facility to the time Plaintiff met with Nurse Kornett to discuss Plaintiff's medical problems. Am. Compl. (Doc. 23) at 3. Nurse Kornett proceeded to order additional testing, and the very next month Nurse Kornett sent Plaintiff for a CT scan, the results of which were presented to Plaintiff five days later. *Id.*

Over the next four months, Plaintiff was taken to appointments with an urologist and a surgeon and taken in for surgery. Plaintiff alleges no facts about why he believes any delay in this treatment was caused by Defendants disregarding a risk of serious harm. For all the court knows, and perhaps for all Plaintiff knows, the appointments and surgery were set on the first available date on the doctors' schedules. The court cannot infer that Defendants disregarded some medical risk based on a delay of Plaintiff's treatment when Plaintiff alleges no facts supporting such an inference.

Third, and similarly, Plaintiff has provided no facts that any delay in his care was caused by conduct that is more than gross negligence. Any delay could have resulted from a physician finding that Plaintiff's condition was not urgent or the dates set for Plaintiff's appointments may have been the first opportunity that Plaintiff's doctors were available. Neither of these situations would establish conduct that is more than gross negligence. Again, the court cannot infer that any delay in care was caused by conduct that is more than gross negligence where Plaintiff alleges no facts to support such an inference.

The court reiterates that establishing deliberate indifference is a high standard. A plaintiff does not establish a claim through "a simple difference in medical opinion between the prison's medical staff and the inmate as to the [inmate]'s diagnosis or course of treatment." *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991). To show deliberate indifference to a serious medical need, a plaintiff must demonstrate that the defendants' response to the need was more than "merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state

law." *Taylor*, 221 F.3d at 1258 (citation and internal quotations omitted). "[T]he question of whether government actors should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment." *Adams*, 61 F.3d at 1545 (quoting *Estelle v. Gamble*, 429 U.S. 97, 107 (1976)). In addition, an inmate's allegation that prison physicians "did not diligently pursue alternative means of treating [the inmate's] condition" is not sufficient to "'rise beyond negligence'" to the level of deliberate indifference. *Id.*

At best, Plaintiff has alleged accidental inadequacy, negligence in diagnosis or treatment, or medical malpractice. Plaintiff's amended complaint, filed after Defendant's first motion to dismiss raising these same arguments, falls far short of what is required to state a claim on which relief can be granted for deliberate indifference. This case is due to be dismissed.

### D. *Warden Daniels and Warden Bolling are entitled to qualified immunity from Plaintiff's claims for relief under § 1983*

Because the court recommends dismissal of Plaintiff's action for failure to state a § 1983 claim, the court declines to address whether Warden Daniels and Warden Bolling would be entitled to qualified immunity had Plaintiff stated a cognizable § 1983 claim.

### E. *Plaintiff's claims arising from circumstances and/or events occurring more than two years prior to the date of his filing are time-barred*

Because the court recommends dismissal of Plaintiff's action for failure to state a claim upon which relief may be granted, the court declines to address Defendants' argument that the statute of limitations time-barred Plaintiff's claims.

## IV. CONCLUSION

For the reasons stated above, it is the RECOMMENDATION of the Magistrate Judge that Defendants' Motion to Dismiss (Doc. 25) be GRANTED for failure to state a claim upon which relief may be granted.

It is further

ORDERED that the parties are DIRECTED to file any objections to the said Recommendation on or before **November 21, 2014**. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting. Frivolous, conclusive, or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); s*ee Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); s*ee also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 7th day of November, 2014.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE